UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PATRICK ALAN OBERHART, )
)
    Petitioner, )
)
vs. ) Case No. 4:12-CV-2234 (CEJ)
)
TROY STEELE, )
)
    Respondent. )

## **MEMORANDUM**

This matter is before the Court on the petition of Patrick Alan Oberhart, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response in opposition, and the issues are fully briefed.

Petitioner, Patrick Alan Oberhart, is currently incarcerated at the Potosi Correctional Center, pursuant to the sentence and judgment of the Circuit Court of the City of St. Louis, Missouri. On September 10, 2008, a jury found petitioner guilty of first degree murder and armed criminal action. Resp. Ex. 1. On October 31, 2008, petitioner was sentenced to two consecutive terms of life imprisonment. Id.

The Missouri Court of Appeals affirmed petitioner's convictions on October 13, 2009. Resp. Ex. 4; State v. Oberhart, 294 S.W.3d 138 (Mo. Ct. App. 2009). On January 26, 2010, petitioner filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Resp. Ex. 5. Counsel was appointed and filed an amended motion for post-conviction relief on June 14, 2010. Id. An evidentiary hearing was held on November 18, 2010. Resp. Ex. 8. On April 25, 2011, the court denied the motion for post-conviction relief. Resp. Ex. 5. Petitioner appealed, and on April 17, 2012 the Missouri Court of Appeals affirmed. Resp. Ex. 7.

In the instant § 2254 petition, petitioner asserts five grounds for relief: (1) that he was denied due process and the right of confrontation when the trial court admitted the victim's written statements; (2) that the same rights were violated when trial court admitted a co-conspirator's out-of-court statements; (3) that trial counsel was ineffective for failing to object to testimony about polygraph tests; (4) that counsel on direct appeal was ineffective for failing to raise the issue of the polygraph tests; and (5) that trial counsel was ineffective for failing to call him to testify in his own defense.

I.  **Background**

In 2006, petitioner and his fiancée, Katherine Lindsey, lived with petitioner's mother, Rita Oberhart-Servais, in her house in St. Louis. Ms. Oberhart supported the couple, loaning them money and paying many of their bills, until she decided in September of 2006 to withdraw her financial support and evict them.

At trial, petitioner's best friend, Jimmie Tate, testified that petitioner and Lindsey offered him money to kill Ms. Oberhart. He eventually accepted this offer. On the evening of December 27, 2006, Ms. Oberhart was returning home after visiting her relatives over Christmas. Before she arrived, petitioner and Lindsey left the house and went for a walk. Tate hid in the house and shot Ms. Oberhart in the face as she opened the front door. He called petitioner to tell him the deed was done, and then fled.

Detective Hanewinkel investigated the murder, and interviewed petitioner. He testified that petitioner first suggested that the murder was gang-related. After further questioning, petitioner said that he hired a thug to burglarize his mother's house to scare her out of the home to prevent her from refinancing and sinking into debt.

Petitioner later told Detective Hanewinkel that he asked Jimmie Tate to burglarize the house, but his mother wasn't supposed to get hurt.

## II. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir.2004). "[T]he prisoner has the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

III. Discussion

A. Ground One

Petitioner argues that his rights under the due process and confrontation clauses of the Constitution were violated by the admission of Ms. Oberhart's written statements, which he contends were inadmissible hearsay.

Trial Exhibits 10 and 11 were Ms. Oberhart's handwritten notebooks recording the loans made by her to petitioner, Lindsey, and Tate. Exhibit 12 was a to-do list Ms. Oberhart had written, which included tasks like canceling phone and television plans and petitioner's automobile insurance, and requiring Lindsey to repay debts and move her furniture out of the house. Exhibit 13 was Ms. Oberhart's calendar, with an entry for December 30, 2006 stating that Lindsey and petitioner were no longer allowed to use her car, had to return her car keys, pay back debts, and move furniture out of her

house. Petitioner argues that these statements were inadmissible hearsay, and violated his rights to a fair trial and to confront witnesses against him.

Petitioner raised this ground on direct appeal, and the state court concluded that the statements were not hearsay, because they were admitted to show that they were made, and not to establish the truth of their contents. The hearsay rule only prohibits the admission of out-of-court statements offered to prove the truth of the out-of-court declaration. State v. Kelley, 953 S.W.2d 73, 85 (Mo. Ct. App. 1997). Ms. Oberhart's statements show that petitioner had a motive to plan the murder. The truth of the statements is irrelevant. Because the statements are not hearsay, their admission does not raise confrontation concerns. See Barrett v. Acevedo, 169 F.3d 1155, 1163 (8th Cir. 1999). The state court's decision was reasonable, and did not run afoul of petitioner's rights. Accordingly, relief on this ground will be denied.

### B. Ground Two

Petitioner next argues that the admission of co-defendant Lindsey's out-of-court statements violated his due process and confrontation rights.

Petitioner and Lindsey were tried separately. At petitioner's trial, the court admitted evidence of Lindsey's out-of-court statements under the co-conspirator exception to the hearsay rule. That exception allows the admission of a co-conspirator's statements made in furtherance of the conspiracy. See State v. Fleischer, 873 S.W.2d 310, 313 (Mo. Ct. App. 1994). However, one statement to which Detective Hanewinkel testified was not made in furtherance of the conspiracy, and fell outside of the exception:

> Det. Hanewinkel: Ms. Lindsey indicated that she was aware of a plan between Patrick Oberhart and Jimmie Tate to stage a burglary, and then it became more elaborate and the plan was to shoot Rita.

-5-

| The State: | Okay. So Ms. Lindsey's statement was that Mr. Oberhart and Mr. Tate planned the murder of Rita Oberhart-Servais. |
|---|---|
| Det. Hanewinkel: | Yes. |

Resp. Ex. 1, p. 465. This testimony was allowed over defense counsel's objection. At the conclusion of the direct examination of Hanewinkel, the court recognized its error, and ordered the testimony stricken. The court denied petitioner's motion for a mistrial, and instead instructed the jury as follows:

> Ladies and gentlemen, during the detective's testimony, a statement was made concerning a statement made by Katherine Lindsey to the effect that Patrick Oberhart and Jimmie Tate planned to stage a burglary but it became more elaborate and the plan was to shoot the victim. That statement is inadmissible. It is stricken from the record. You are to disregard that statement.

Resp. Ex. 1, p. 471.

There is no question that the statement at issue constituted inadmissible hearsay. The question is whether the court's instruction cured the error, and if not, whether the admission of the statement rose to the level of a violation of petitioner's constitutional rights. On direct appeal, the state court concluded that the error was cured by the instruction to disregard the objectionable testimony. Petitioner argues that the instruction was insufficient, as it is unlikely the jury was able to follow it.

Juries are generally presumed to follow instructions to disregard. See Greer v. Miller, 453 U.S. 756, 767 n. 8 (1987). A "narrow exception to this principle" applies in "contexts in which the risk the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." See Bruton v. United States, 391 U.S. 123, 135-36 (1986). In Bruton, the Supreme Court held that "[d]espite the concededly clear instructions to the jury to disregard [co-defendant's] inadmissible

hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." The narrow exception set forth in Bruton does not apply to this case, as this was not a joint trial, and the instruction was one to disregard entirely rather than a limiting instruction allowing the jury to consider a confession against one defendant but not the other. See United States v. Mitchell, 502 F.3d 931, 965 (9th Cir. 2007) ("Bruton applies only where co-defendants are tried jointly, and is inapplicable where the non-testifying codefendant is severed out, as was the case here."); see also Cargill v. Turpin, 120 F.3d 1366, n.16 (11th Cir. 1997); Hoover v. Beto, 467 F.2d 516, 530 (5th Cir. 1972). In this case, the state court reasonably found that the instruction adequately cured the error, as the jury presumably followed the instruction.

Furthermore, even without the instruction, the admission of the statement was harmless. Petitioner's clear motive, inconsistent statements to the police, and actions leading up to and on the night of the murder, strongly support the guilty verdict. All three of the co-conspirators pointed fingers at each other - Tate identified petitioner and Lindsey as the masterminds of the murder, petitioner tried to convince the jury that Lindsey and Tate planned the murder without him, and Lindsey said that Tate and petitioner were the guilty parties. The Court cannot say that the jury would find Lindsey's self-serving statement credible, nor does the Court believe that the admission of this single statement would so "fatally infect[]" the trial as to rise to the level of a due process violation, Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995), or constitute anything other than a harmless error in the context of the Confrontation Clause. See Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir. 1999) (explaining

harmless error review as applied to Confrontation Clause violations). Relief on this ground will be denied.

   C.   Ground Three

Petitioner contends that his trial counsel was ineffective for failing to object when the prosecutor and a witness for the prosecution referred to polygraph examinations. At trial, Detective Hanewinkel testified that he questioned both petitioner and Tate after the murder. Petitioner changed his story several times, and at first agreed to take a polygraph test, but later refused. Tate also changed his story multiple times, and agreed to take a polygraph test. Ultimately, neither petitioner nor Tate took a test. Petitioner's refusal to submit to a polygraph was mentioned in the prosecution's opening statement, but not emphasized. Tate's agreement to take the test, and petitioner's refusal to do so, were not mentioned in closing arguments, and were not dwelled upon or emphasized during the direct examinations of Tate or Hanewinkel. Nevertheless, petitioner argues that his counsel's failure to object to the references to polygraphs constituted ineffective assistance.

In order to state a claim of ineffective assistance of trial counsel, petitioner must meet the Strickland standard: petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. Strickland, 466 U.S. at 687. To establish prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Federal habeas review of a Strickland claim is highly deferential, because "[t]he question is not whether a federal court believes the state

court's determination under the Strickland standard was incorrect but whether the determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

Petitioner raised this claim in his motion for post-conviction relief in state court. That court agreed that Missouri excludes all evidence of polygraph tests - including an agreement or refusal to submit to the test - and that counsel's failure to object was due to ignorance of the law, and not trial strategy. At the hearing on petitioner's motion, trial counsel admitted that, while he knew that testimony about the results of a polygraph exam was inadmissible, he was unaware that testimony about a person's agreement or refusal to take an exam was also inadmissible. However, the motion court found that counsel's error was not so grave as to constitute constitutionally deficient performance, nor was petitioner prejudiced by counsel's mistake. The Missouri Court of Appeals affirmed.

Petitioner cannot show that his counsel's failure to object resulted in the prejudice required to satisfy the second prong of Strickland. The references to the polygraph examinations were fleeting, and not mentioned in closing argument. The petitioner did not testify and there is no indication that the polygraph references affected the jury's credibility assessments. The evidence presented at trial against petitioner was strong, and there is no reasonable probability that, had counsel objected to the testimony, the result of the trial would have been different. Because the Court finds the state court's determination under the second prong of Strickland was reasonable, petitioner is not entitled to relief, and the Court need not address the first prong of the Strickland test.

### D. Ground Four

Petitioner argues that his counsel on direct appeal was ineffective for failing to raise the issue of the polygraph evidence.

At the post-conviction evidentiary hearing, appellate counsel testified that she did not raise the issue of the polygraph evidence because it was not preserved before the trial court, and she wanted to pursue claims which she thought had a better chance of success. The motion court found that this constituted reasonable appellate strategy, and was not deficient performance. The Missouri Court of Appeals affirmed.

The state court's application of Strickland was reasonable, and petitioner cannot show that appellate counsel's performance fell below an objective standard of reasonableness. Appellate counsel made a reasoned determination to pursue the claims which she determined to have the best chance of success. There is nothing constitutionally infirm about this exercise of her professional judgment. See Jones v. Barnes, 463 U.S. 745 (1983) (holding that appellate counsel is not required by the Constitution to raise every nonfrivolous issue requested by defendant). Accordingly, relief on this ground will be denied.

### E. Ground Five

Petitioner argues that his trial counsel was ineffective for failing to call him to testify on his own behalf.

At the post-conviction evidentiary hearing, petitioner's trial counsel testified that, prior to trial, he and petitioner discussed the possibility that he would call petitioner to testify. They agreed to adopt a "wait and see" approach, and decided to determine whether petitioner should testify depending on the evidence presented by the State at trial. Counsel testified that, after the State rested, he advised petitioner not to take

the stand, because petitioner's testimony would conflict with the theory of the case as presented by the defense. The defense's theory was that Tate and Lindsey conspired to commit the crime, and petitioner was not involved. Petitioner wished to testify that Tate did not commit the murder, and that the murder was committed by an unknown third party. Counsel testified that, ultimately, petitioner agreed that he should not testify and did not change his mind after making this decision. Resp. Ex. 8

At the evidentiary hearing, petitioner testified that he wanted to testify at trial but defense counsel refused to call him as a witness. He explained that, when the court advised him of his right to testify and questioned him about the voluntariness of his waiver of this right, he did not understand and was confused because the defense had already rested, and he did not believe he could reopen testimony. Id.

The post-conviction motion court denied relief on this claim, and found that petitioner voluntarily waived his right to testify. Resp. Ex. 5. The court of appeals affirmed, and emphasized that the motion court was free to believe counsel's testimony, and disbelieve petitioner's. That court further noted that counsel's advice not to testify constituted sound trial strategy, as petitioner's testimony would have contradicted the theory of the defense. Resp. Ex. 7.

The state court's application of law and determinations of fact were reasonable. The evidence shows that defendant voluntarily waived his right to testify, and that counsel provided competent advice on the subject. Petitioner gave the trial court no indication that he wished to testify, and in fact affirmatively represented to that court that he was waiving his right and was aware that the decision was entirely his. "The defendant may not… indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.'" United

States v. Bernloehr, 833 F.2d 749, 752 (8th Cir. 1987). Accordingly, petitioner's claim for relief on this ground will be denied.

IV. **Conclusion**

For the reasons discussed above, the Court finds that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Because petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

A separate judgment in accordance with this Memorandum will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 14th day of May, 2014.